IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEWIS CARL BARNETT,           )
                              )
         Petitioner,          )
                              )
    v.                        )          Civil Action No. 2:10cv356-MHT
                              )                     (WO)
UNITED STATES OF AMERICA,     )
                              )
         Respondent.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion under 28 U.S.C. § 2255 to vacate, set aside,

or correct sentence filed by federal inmate Lewis Carl Barnett ("Barnett").

## I.   BACKGROUND

On December 23, 2008, Barnett appeared before this court and, pursuant to a plea

agreement, pled guilty to possession of a firearm by a convicted felon, in violation of 18

U.S.C. § 922(g)(1).  Among other things, the plea agreement provided that Barnett would

receive a sentence at the lowest end of the applicable advisory guidelines range and that "no

more than 24 months of the sentence imposed [would] run consecutively to any prior

undischarged term of imprisonment, as contemplated in U.S.S.G. § 5G1.3(c)."[1]  Ex. A at 2-

---

[1] Section 5G1.3 of the sentencing guidelines governs the imposition of a sentence on a
defendant subject to an undischarged term of imprisonment.  The guideline contains three
subsections, of which § 5G1.3(c) provides:

(Policy Statement)   In any other case involving an undischarged term of
imprisonment, the sentence for the instant offense may be imposed to run
concurrently, partially concurrently, or consecutively to the prior undischarged term

(continued...)

3.[2]  The plea agreement also contained a provision whereby Barnett waived his rights to appeal his conviction and sentence or to collaterally attack his sentence, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.  *Id.* at 6.

A sentencing hearing was held on May 13, 2009, after which the district court sentenced Barnett to 57 months in prison.  In accordance with the plea agreement, the district court ordered that only 24 months of the sentence would be served consecutively to the sentence for robbery that Barnett was then serving in state prison in Alabama[3] and that the remaining 33 months would be served concurrently with his state sentence. Ex. C at 104-05. Barnett did not undertake a direct appeal.

_____

[1](...continued)
of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c).  In determining whether a concurrent, partially concurrent, or consecutive sentence is "a reasonable punishment," and to "avoid unwarranted disparity," a sentencing court is to consider the factors set out in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)), as well as (a) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence; (b) the time served on the undischarged sentence and the time likely to be served before release; (c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and (d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.  U.S.S.G. § 5G1.3, comment. (n.3(A)i-v).

[2] References to exhibits ("Ex.") are to exhibits filed by the Government with its answer. Document numbers are those assigned by the Clerk in the instant civil action or, where applicable, in Barnett's criminal proceedings.  Page references in the pleadings are to those assigned by CM/ECF.

[3] In July 1993, Barnett was convicted in Alabama of first-degree robbery and sentenced to 20 years in state prison.  Prior to his federal firearm-possession conviction that is the subject of his § 2255 motion, Barnett was paroled and revoked twice on his state sentence, the more recent revocation occurring in January 2006.  The acts underlying his federal firearm-possession conviction took place in January 2006 and were the basis for his January 2006 parole revocation, which led to his return to state prison to serve the remaining portion of his state sentence for robbery.

On August 3, 2009, Barnett was paroled by the State of Alabama,[4] at which time he entered the custody of the Federal Bureau of Prisons ("BOP") to begin serving his federal sentence.  Upon learning that the BOP had computed his federal sentence as 57 months, with 54 months remaining to be served, Barnett filed a *pro se* motion to clarify his sentence with the district court, arguing that the BOP had computed his sentence incorrectly and asking the court to instruct the BOP that his plea agreement provided that his federal sentence was limited to 24 months' incarceration.  Ex. F.  In a brief opposing Barnett's motion to clarify his sentence, the Government argued, in pertinent part, as follows:

> When Barnett was sentenced, the parties (and perhaps the Court) anticipated that Barnett might remain incarcerated on the state parole violation for a term of years.  Because his parole had been revoked due to the same criminal episode that spawned his federal case, it was the intent of the parties (and perhaps the Court) to fashion a sentence that would not cause Barnett to be unduly punished twice for the same offense.  To effect that intent, the parties agreed that Barnett would be sentenced at the lowest end of the applicable advisory Guidelines range, and that no more than 24 months of his sentence would be ordered to run consecutive to his prior, undischarged state sentence.  *See* Plea Agreement, Doc. #29.

> Barnett apparently assumes that his [plea] agreement, and the Court's concomitant sentence, assured him that he would *serve no more than* 24 months in federal custody, but that assumption is incorrect.  In fact, the agreement assured that he would serve *at least* 24 months in federal custody, regardless of how long his state sentence ran.  That is because Barnett was sentenced to a total term of 57 months.  Though he could have served as much as 33 months of that sentence in a state facility concurrently with his state sentence, he had not even completed 3 months before he was paroled by the state.  Therefore, he still has 54 months left of his sentence to serve and nowhere to serve it but in federal custody.

---

[4] This represented the third time Barnett was paroled on his state sentence for robbery.

3

What Barnett really asks of this Court is to order that 33 months of his sentence has already been served retroactively.  A district court, however, does not have the authority to impose a sentence to be served concurrently with a discharged sentence.  *United States v. Fay*, 547 F.3d 1231, 1236 (10th Cir. 2008); *see also United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("There is no provision, either in the Act or in the Guidelines, stating that the court may order that the sentence it imposes be deemed to have been served concurrently with a prior prison term that has been fully discharged.").  That is because a sentence to a term of imprisonment "commences on the date the defendant is received in custody … [at] the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  Any already discharged portion of a previous sentence may not be credited to a newly imposed sentence.  *See* 18 U.S.C. § 3585(b); *United States v. McNeil*, 573 F.3d 479, 480 (7th Cir. 2009) ("[T]he court cannot order a sentence to run concurrent with a nullity.").  Instead, when a defendant like Barnett has his state sentence expire before his concurrent federal sentence, the remainder of the federal sentence must be served consecutively.  *See generally United States v. Cermark*, 622 F.2d 1049 (1st Cir. 1980) (where the court imposed a 12-year sentence to run concurrently with the defendant's existing state sentence, defendant was subsequently paroled from state prison and transferred to federal prison to serve out the remainder of his sentence).

Had the parties (and this Court) wished to ensure that Barnett would serve *no more than* 24 months in federal custody, Barnett would have received a sentence of 24 months.  But Barnett had two guns in the car with him when he and two other people were on their way to rob a bank in Fort Deposit, Alabama, and the undersigned attorney (and this Court) wanted to ensure that Barnett would go back to jail for at least 57 months.  The BOP has therefore reached the correct result, and this Court should deny Barnett's motion.

Ex. H at 2-3 (emphasis in original).

The U.S. Probation Office also filed a memorandum with the district court responding to Barnett's motion to clarify his sentence as follows:

The defendant appears to be contesting his time computation concerning his date of release.  On May 13, 2009, Barnett appeared before the Court for sentencing, while on a writ from the custody of the Alabama Department of Corrections.  According to the plea agreement, no more than 24

months of the sentence imposed would run consecutively to any prior undischarged term of imprisonment. The Court accepted the plea agreement and sentenced Barnett to "57 months, 24 months shall run consecutive to the defendant's state case CC-93-410 in Montgomery County, and the remaining 33 months shall run concurrently."

The defendant was arrested for the instant offense on January 18, 2006; however, he was on parole when he committed the offense and his parole was revoked. After being sentenced, his state and federal sentence began to run concurrently. Once he was returned to the state, Barnett was paroled and released to the Bureau of Prisons on August 3, 2009. Barnett was sentenced to 57 months custody in case number 2:08CR144, with 33 months to run concurrently with his state sentence. His early release from state custody left no sentence to run the federal sentence concurrent to.

Barnett's sentence has been computed correctly, thus the remaining 54 months will be served in the Bureau of Prisons. The defendant was sentenced in accordance with the plea agreement. The fact that he was almost immediately released from state custody upon receiving his federal sentence has no impact on the total sentence in this case.

Ex. G.

On October 20, 2009, the district court entered an order summarily denying Barnett's

motion to clarify his sentence. Ex. I.

On April 10, 2010, Barnett, proceeding *pro se*, filed this § 2255 motion, asserting the

following claims:

1.    His guilty plea was not knowing and voluntary because, when entering the plea, he believed he would spend only 24 months in federal custody and would be given 33 months' credit toward the state time he had already served.

2.    "The sentencing court failed to protect [his] rights under the Due Process Clause and his right to counsel" by failing to properly inquire about his understanding of his plea and the calculation of his sentence and by allowing his counsel to withdraw without

5

notice at a critical stage.

3.     His counsel was ineffective for (a) failing to explain to him that the BOP, and not the district court, would determine what credit, if any, he would receive against his federal sentence for time he had already served in state prison; (b) failing to argue for a variance at sentencing; and (c) withdrawing from the case at a "critical post-conviction phase without notification."

4.     The Government committed prosecutorial misconduct by knowingly entering into a plea agreement that it knew could not be enforced and by failing to inform him he would not receive credit for the time served on his state sentence.

Doc. No. 1 at 3-4.

The Government answers that Barnett's claims regarding the voluntariness of his guilty plea and the court's alleged failure to protect his due process rights and right to counsel are barred from review under the appeal/collateral-attack waiver in his plea agreement.  Doc. No. 7 at 10.  In addition, the Government argues that these claims are procedurally defaulted because they were not raised on direct appeal.  *Id*. at 10-11 n.48.  The Government further argues that Barnett's claims of and ineffective assistance of counsel and prosecutorial misconduct should be rejected because they are without merit.  *Id*. at 11-18.

After due consideration of Barnett's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.   DISCUSSION

6

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually

7

innocent."

### B. Claims Regarding Voluntariness of Guilty Plea and Court's Failure to Protect Due Process Rights and Right to Counsel

The Government contends that Barnett's claims regarding the voluntariness of his guilty plea and the sentencing court's purported failure to protect his due process rights and right to counsel are barred from review under the appeal/collateral-attack waiver contained in Barnett's plea agreement.  Doc. No. 7 at 10.  Barnett, however, maintains that his claims in this regard concern the validity of the guilty plea itself and that the waiver provision applies only to the sentence imposed, not, as the Government contends, issues relating to the conduct of the parties in entering the plea agreement.[5]  Doc. No. 11 at 2-3.  The court finds

---

[5] The waiver provision in the plea agreement provided, in pertinent, part:

Waiver of the Defendant's Right to Appeal or Collaterally Attack the Sentence.

d. *Defendant's Waiver*.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives any and all of his rights under 18 U.S.C. § 3742 to appeal the sentence in this case.  The defendant specifically waives his right to appeal the sentence on the grounds that the Sentencing Guidelines are in any respect unconstitutional, or that any fact found by the Court for sentencing was not alleged in the Indictment, admitted by the defendant, found by a jury, or found beyond a reasonable doubt.  The defendant further expressly waives his right to appeal the conviction and sentence on any other ground, including any challenge to the reasonableness of the sentence, and waives the right to attack the sentence in any post-conviction proceeding.

e. *Exceptions*.  This waiver does not include (and the defendant expressly reserves) the right to appeal or collaterally attack the sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct.  The defendant is released from this waiver if the Government files an appeal under 18 U.S.C. § 3742(b).

(continued...)

it unnecessary here to decide the waiver provision's scope, because Barnett's claims are procedurally defaulted due to his failure to raise them on direct appeal.

Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994). A petitioner can avoid this procedural bar only by showing one of the two exceptions to the procedural default rule:

> Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for the procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004) (emphasis in original; citations and quotations omitted); *see Bousley v. United States*, 523 U.S. 614, 621-22 (1998). Barnett, however, does not attempt to demonstrate cause for his failure to raise his claims on direct appeal.[6] Nor does Barnett maintain (or present evidence) that he is actually innocent

---

[5](...continued)
Ex. A at 6.

[6] To show cause, a petitioner must prove that "some objective factor external to the defense prevented the petitioner or his counsel from raising the claim previously. *Murray v. Carrier*, 477 U.S. 478, 488-92 (1986).

of the offense of which he was convicted.[7]  Therefore, his claims regarding the voluntariness of his guilty plea and the sentencing court's purported failure to protect his due process rights and right to counsel are barred from collateral review by procedural default.[8]

### C.   Ineffective Assistance of Counsel Principles

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's

---

[7] The "actual innocence" exception is exceedingly narrow in scope. *Lynn*, 365 F.3d at 1235 n.18. "'[A]ctual innocence' means factual innocence, not mere legal innocence." *Bousley*, 523 U.S. at 623.

[8] To a certain degree, Barnett's allegations of ineffective assistance of counsel imply a claim that his guilty plea was not voluntary and knowing.  To the extent this implication is carried out in Barnett's allegations of his counsel's deficient performance, this court's disposition of the claims of ineffective assistance of counsel (*see* Part II.C.1, infra) will also dispose of any related claim regarding the voluntariness of the guilty plea.

performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id.*  (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  *Id.*

As noted above, the prejudice component of *Strickland* requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the

11

other one has been.  *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.    Counsel's Failure to Explain That BOP Calculates Credit Against Federal Sentence for Time Served

Barnett contends that his counsel rendered ineffective assistance by failing to explain to him that the BOP, and not the district court, would determine what credit, if any, he would receive against his federal sentence for the time he had already served in state prison.[9]  Doc. No. 1 at 3.

Responding to this allegation, Barnett's former counsel, Aylia McKee, states in an affidavit filed with this court that, to the best of her recollection, she advised Barnett that the BOP would calculate his jail credit and time.  Doc. No. 4 at 1.  To the extent that Barnett's claim in this regard is limited to his counsel's alleged failure to inform him that the BOP (and not the district court) would calculate the credit for state-time served that he would receive against his federal sentence, the undersigned finds that it was a mere "collateral consequence" of Barnett's guilty plea that the BOP would determine whether any portion of his state sentence would be credited toward his federal sentence.  Counsel cannot be constitutionally ineffective for failing to inform a defendant of collateral consequences of a guilty plea.  *See United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985); *United States*

---

[9] The court assumes here that Barnett's reference to time "already served" in state prison pertains to the time he served in state prison from the January 2006 revocation of his state parole (based on acts that subsequently formed the basis of his guilty plea and federal firearm-possession conviction) through his entry into BOP custody, in August, 2009, after he was again paroled and began serving his federal sentence in a federal facility.

*v. Wills*, 881 F.2d 823, 825 (9th Cir. 1989).

Of more consequence, however, is Barnett's apparent contention that he would not have pled guilty had he known that his parole from his state sentence only three months after imposition of his federal sentence would not work to effectively extinguish all but 24 months of his 57-month federal sentence. *See* Doc. Nos. 11 & 11-1. As indicated earlier, the express language of the plea agreement provided that "no more than 24 months of the sentence imposed [would] run consecutively to any prior undischarged term of imprisonment, as contemplated in U.S.S.G. § 5G1.3(c)."[10] Ex. A at 2-3. During the change of plea colloquy, Barnett acknowledged that he and his counsel had discussed how the sentencing guidelines might apply in his case. Ex. B at 9. Neither the written plea agreement nor the transcript of the change of plea colloquy contains any indication that Barnett's state sentence would be credited in any respect toward his federal sentence. While there appears to have been some discussion about this question at Barnett's sentencing hearing (*see* Ex. C at 101-03), there is no evidence that *prior to pleading guilty*, Barnett was ever promised or advised, as an inducement to plead guilty, that he would receive such credit. At the change of plea hearing, the following exchange took place between the magistrate judge and Barnett:

> THE COURT:  . . .  Mr. Barnett, has anyone made any promise or assurance to you that is not in the plea agreement to persuade you to accept the

---

[10] The commentary to U.S.S.G. § 5G1.3(c) notes that the BOP has "exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit for time served under certain circumstances." U.S.S.G. § 5G1.3(c), comment. (n.3(E)).

13

plea agreement?

[BARNETT]: No, sir.

Ex. B at 6. "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Where a defendant on state parole at the time of the instant federal offense has had his parole revoked, the sentencing guidelines favor imposition of a federal sentence that runs consecutively to the sentence imposed for the state revocation.[11]  Thus, absent the plea agreement in his case, Barnett's entire federal sentence could have been imposed to run consecutively to the state sentence he was serving, such that whenever he was released from state custody he would have been required to serve *the full amount* of his federal sentence

---

[11] The application notes to U.S.S.G. § 5G1.3(c), which provides a policy statement concerning whether to impose a sentence concurrently, partially concurrently, or consecutively to a prior undischarged sentence, provide, in pertinent part, as follows:

Undischarged Terms of Imprisonment Resulting from Revocations of Probation, Parole or Supervised Release.—Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked.  Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

§ 5G1.3(c), comment. (n.3(C)).

in federal prison.  However, under the terms of his plea agreement, Barnett was afforded the

opportunity to begin serving his federal sentence immediately, while still in state custody.

As the Government observes in its answer to the § 2255 motion:

> This could have been a considerable benefit to Barnett, because at the time of
> his federal sentencing, his state sentence was not scheduled to expire for
> another three years.  If forced to finish out his state sentence, Barnett would
> have been able essentially to "double count" up to 33 months of prison time
> toward both sentences, thereby hastening his return to free society.

Doc. No. 7 at 13.  This (and a sentence at the bottom of the applicable advisory guideline

range) was the bargained-for benefit bestowed on Barnett under the plea agreement.

There is, moreover, nothing in the plea agreement – or in the change of plea colloquy

– anticipating that Barnett's state sentence would "expire," with the grant of parole, in three

months, rather than three years, or suggesting that if Barnett were to be paroled from his state

sentence before serving another 33 months of that sentence (which would have run

concurrently with his federal sentence), he would receive the additional windfall of receiving

credit against his federal sentence for "serving" time that he did not in fact serve, such that

his actual sentence would be less than 57 months.[12]  As stated by the U.S. Probation Office

---

[12] It appears that at the time of his federal sentencing in May 2009, Barnett had approximately
three years remaining on his state sentence.  Presumably, Barnett remained subject to revocation of
his state parole for some time after his release on state parole in August 2009 (although he entered
federal prison at that time).  As suggested by the Government in its brief responding to Barnett's
motion to clarify his sentence, if the parties had, as Barnett now claims, wished to ensure that,
however much time Barnett would serve in state prison, he would serve a federal sentence of no
more than 24 months, such a result could have been more easily effected through imposition of a 24-
month federal sentence to run consecutively to his state sentence and not through imposition of the

(continued...)

in its memorandum responding to Barnett's motion to clarify his sentence, Barnett's early release from state custody left no sentence to run the federal sentence concurrently to. Ex. G. However, his federal sentence was 57 months; therefore, he had nowhere to serve the remaining 54 months of his sentence but in federal custody. *Id.*

Further militating against Barnett's present contention that a "but for" factor in his decision to plead guilty was his supposed belief that a grant of parole from his state sentence would effectively erase all but 24 months of his 57-month federal sentence was the possibility, at the time he pled guilty, that he would *not* be paroled from his state sentence at any time before serving the approximately three years remaining on his state sentence. By the time his federal sentence was imposed, Barnett's parole on his state sentence had already been revoked three times. A defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Under the circumstances – and in light of the terms of the plea agreement and Barnett's statements during the change of plea colloquy that he was not induced to plead guilty by any promises or advice not reflected in the plea agreement – the court concludes that Barnett has failed to establish ineffective assistance of counsel as to this issue. Consequently, Barnett is not entitled to any relief based on this claim.

_____

[12](...continued)
sentence that was actually imposed. *See* Ex. H at 2-3.

### 2.    *Counsel's Failure to Argue for Variance*

Barnett also contends, in cursory fashion,[13] that his counsel, Ms. McKee, rendered ineffective assistance by failing to argue for a variance at sentencing.  Doc. No. 1 at 4.  However, under the express terms of his plea agreement, Barnett agreed to a sentence within (and at the lowest end of) the applicable advisory guidelines range.  McKee was therefore not ineffective for failing to arguing for a sentence *below* the guidelines range, contrary to the terms of the plea agreement.  Barnett's failure to demonstrate deficient performance in this regard by McKee or any resulting prejudice precludes relief based on this claim of ineffective assistance of counsel.  *Chandler*, 218 F.3d at 1313.

### 3.    *Counsel's Withdrawal from Case*

Barnett contends that McKee rendered ineffective assistance of counsel by withdrawing from the case at a "critical post-conviction phase without notification."  Doc. No. 1 at 4.  However, the court's records reflect that McKee did not withdraw as Barnett's counsel during the period about which Barnett complains.  Barnett appears to suggest that McKee abandoned him after he entered federal custody in August 2009 and first learned, he says, that his parole from his state sentence would *not* wipe out all but 24 months of his 57-month federal sentence.  However, Barnett presents no evidence that he attempted to contact McKee when this matter purportedly came to his attention.  Morever, Barnett was able to

---

[13] Barnett does not suggest on what grounds McKee should have argued for a variance.

effectively present his claim in this regard in his motion to clarify his sentence filed with the

district court in September 2009. Ex. F. The district court considered Barnett's motion and

entered an order denying the motion. Ex. I. Barnett filed a notice of appeal challenging the

denial of his motion to clarify his sentence, but his request to proceed *in forma pauperis* was

denied based upon certification by the district court that the appeal was frivolous. Exs. J &

K. The Eleventh Circuit then denied Barnett's motion to proceed *in forma pauperis*, also

finding the appeal to be frivolous. *See* Case No. 2:08cr144-MHT, Doc. No. 78. Under the

circumstances, Barnett fails to demonstrate deficient performance by McKee or any resulting

prejudice. Therefore, he is not entitled to any relief based on this claim of ineffective

assistance of counsel.

### D. Prosecutorial Misconduct

Barnett contends that the Government entered into the plea agreement knowing that

it was unenforceable and, specifically, misled him into signing the plea agreement under the

false assumption that his state sentence would be credited toward his federal sentence. Doc.

No. 1 at 4.

As indicated above in this Recommendation, there is no evidence that Barnett, prior

to pleading guilty, was ever promised or advised, as an inducement to plead guilty, that his

state sentence would be credited in any respect toward his federal sentence. The plea

agreement called for a sentence at the lowest end of the applicable advisory guidelines range,

with no more than 24 months to be served consecutively to the prior undischarged state term

18

of imprisonment.  That is the sentence for which the Government advocated and the sentence that district court imposed.  There is no indication in the record that the Government acted improperly in any way in the negotiation of the plea agreement.  Accordingly, Barnett is not entitled to any relief based on his claim of prosecutorial misconduct.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the § 2255 motion filed by Barnett be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 15, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661

F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of

the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 1st day of August, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

20